UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FRED STEVENS, et al.,

Plaintiffs,

-v- 5:25-CV-1256 (DNH/CBF)

BERKSHIRE BANK, a Massachusetts Trust Company,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| PEIFFER WOLF CARR KANE CONWAY & WISE, LLP<br>Attorneys for Plaintiffs<br>935 Gravier Street, Suite 1600<br>New Orleans, LA 70112 | DANIEL CENTNER, ESQ.<br>JASON KANE, ESQ. |
| SILVER LAW GROUP<br>Attorneys for Plaintiffs<br>11780 W. Sample Road<br>Coral Springs, FL 33065 | PETER M. SPETT, ESQ.<br>SCOTT SILVER, ESQ. |
| FOX ROTHSCHILD LLP<br>Attorneys for Plaintiff Fred Stevens<br>One Biscayne Tower, Suite 2750<br>2 South Biscayne Boulevard<br>Miami, FL 33131 | ROBERT F. ELGIDELY, ESQ.<br>JOSEPH A. DEMARIA, ESQ.<br>JOSEPH J. DIPASQUALE, ESQ. |
| MCGUIRE WOODS LLP<br>Attorneys for Defendant<br>Tower Two-Sixty, Suite 1800<br>260 Forbes Avenue<br>Pittsburgh, PA 15222 | DOUGLAS J. HORN, ESQ.<br>JARROD D. SHAW, ESQ.<br>NELLIE E. HESTIN, ESQ. |

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

On September 10, 2025, plaintiffs Fred Stevens ("Stevens"), acting in his capacity as both the Administrator of the Confirmed Joint Plan of Liquidation in the Miles Burton Marshall ("Marshall") Bankruptcy Case and as the Assignee of Bank Litigation Claims from 369 Holders of Allowed Class 4 Claims in the Marshall "Eight Percent Fund," Timothy and Beth Greenwood (the "Greenwoods") acting on behalf of all similarly situated investors, and Darlene and Wayne Stetson (the "Stetsons"), also acting on behalf of all similarly situated investors (all collectively, the "plaintiffs"), filed this four-count putative class action against Berkshire Bank ("Berkshire" or "defendant") bringing common law claims of aiding and abetting conversion, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and unjust enrichment.[1]

Berkshire has moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(6) and 9(b). Dkt. No. 26. Plaintiffs have opposed. Dkt. No. 31. The motion has been fully briefed and will be

---

[1] Berkshire is now known as Beacon Bank & Trust but will be referred to as Berkshire for purposes of this motion.

considered on the basis of the submissions and without oral argument. Dkt. Nos. 1, 26, 31, 35, 37.

## II. BACKGROUND

This case arises from the plaintiffs and putative class members' loss of investment funds stemming from a pyramid scheme (the "Ponzi scheme") orchestrated by non-party Marshall. Compl. ¶ 1. For several decades, Marshall operated a series of businesses and owned several properties in Madison County, New York. *Id.* ¶¶ 64, 72. Marshall's business activities included the preparation of tax returns, property maintenance self-storage, insurance brokering, printing, and real estate rentals. *Id.* ¶ 64.

However, Marshall's primary business endeavor was soliciting and securing money for investment into a fund he originated (the "Marshall Fund" or the "Fund") by offering promissory notes ("Notes"); *i.e.*, written documents promising to repay investors a guaranteed eight percent annual return. Compl. ¶¶ 72, 78. Over several decades, Marshall secured roughly ninety million dollars in investments from approximately 1,000 noteholder investors to whom he promised the eight percent return. *Id.* ¶ 72. These investors included "residents and retirees in Madison County" and/or individuals affiliated with churches, volunteer fire departments, and community organizations. *Id.* ¶ 73.

Working to advance his Ponzi scheme, Marshall paid investors their promised returns from new funds raised through soliciting new investors. *Id.* ¶¶ 14, 76. Marshall operated the Fund through an individual account along with separate bank accounts associated with each of his six sole proprietorship. *Id.* ¶¶ 5, 64. Marshall told new investors that their money would be used to "purchase property, refurbish rental houses," and pay other related expenses but actually used this money to repay prior investors. *Id.* ¶ 75. In other words, Marshall was running "a massive Ponzi scheme. *Id.* ¶ 76.

In approximately 2015, Marshall became a banking customer of Berkshire. Compl. ¶ 5. From that time until 2023, Marshall held an account with defendant in his own name, along with six other accounts linked to businesses he operated as a sole proprietor. *Id.* According to plaintiff, while Berkshire required that Marshall have distinct accounts for each business, they allowed permitted his commingling funds from these accounts into the account in his name. *Id.* ¶ 9.

According to plaintiff, Berkshire was required to maintain compliance and surveillance programs to guard against, *inter alia*, money laundering. *Id.* ¶¶ 52–57. Part of this compliance was a Know Your Customer ("KYC") process to verify a customer's identity, assess their risk, and monitor their transactions. *Id.* ¶¶ 65–66. By early 2018, plaintiff asserts that Berkshire,

by way of their KYC protocol and other external notifications, knew Marshall was: (1) actively soliciting investments then funneling the money he obtained through his banking accounts; (2) neither licensed to sell investments nor provide investment advice; and (3) holding liabilities which exceeded his assets by tens of millions of dollars. *Id.* ¶ 12. Nonetheless, plaintiffs contend defendant permitted Marshall's funneling of money. *Id.*

And despite Berkshire's monitoring and KYC processes, Marshall's activity allegedly triggered numerous alerts within Berkshire's sophisticated monitoring systems between 2017 and 2023. *Id.* ¶ 13. Berkshire knew Marshall sold unregistered promissory notes, routinely deposited large amounts of investment money into his accounts, comingled this money with revenue from his other business activities and his personal funds, and lacked the cash flow to satisfy the promissory notes he sold. *Id.* ¶ 14. According to plaintiffs, Berkshire was even warned by another bank about Marshall's activity. *Id.* ¶ 15. Specifically, a fraud investigator at NBT Bancorp Inc. ("NBT Bank") emailed Berkshire's Security & Fraud Investigations department to convey Marshall "may be running a Ponzi scheme[.]" *Id.*

Marshall conducted most of his banking activities at Berkshire's Oriskany Falls branch. *Id.* ¶ 16. But when defendant decided to close this branch in 2021, concerned with keeping Marshall around as a banking

customer, they allegedly provided him with a "scanner that enabled him to remotely deposit up to $300,000 in checks per day[.]" *Id.*

On April 20, 2023, Marshall filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Action"). *Id.* ¶ 31. At that time, Marshall held assets valued at roughly 22 million dollars and liabilities owed to around 985 noteholder investors totaling approximately 95 million dollars. *Id.* ¶ 33. Seeking to recover their losses from Marshall, plaintiffs bring this action on behalf of his victims, alleging that they were financially harmed by Berkshire because they knew of Marshall's scheme and substantially assisted it. *Id.* ¶¶ 120–21.

## III. <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So while legal csonclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551

U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV. **DISCUSSION**

Plaintiffs' complaint brings four claims for violations of New York State law: (1) aiding and abetting fraud; (2) aiding and abetting breach of fiduciary duty; (3) aiding and abetting conversion; and (4) unjust enrichment. Compl. ¶¶ 127–150. Berkshire has moved to dismiss plaintiffs' complaint on the basis that their aider and abettor claims fail to set forth factual allegations that defendant had actual knowledge of or substantially assisted Marshall's Ponzi scheme. Def.'s Mem., Dkt. No. 26-1 at 14.[2] Rather, defendant contends that plaintiffs have only offered up allegations of red flags to suggest Berkshire should have known of Marshall's scheme, but these allegations nonetheless fail to give rise to the strong inference of actual knowledge required to survive a motion to dismiss. *Id.* at 14–15. Berkshire also seeks dismissal of plaintiffs' unjust enrichment claim, arguing plaintiffs fail to

[2] Pagination corresponds to CM/ECF headers.

demonstrate a benefit defendant received at their expense because Berkshire's relationship to the plaintiffs was "too attenuated." *Id.* at 15.

**A. <u>Rule 12(d) Conversion</u>**

Before jumping into the each of the four causes of action, plaintiffs, by way of their opposition to Berkshire's motion, contend that Berkshire's motion to dismiss should instead, pursuant to Rule 12(b), be construed as one for summary judgment which should be denied until the parties have completed discovery in this matter because defendant seeks to introduce documents for the Court to consider as having been incorporated by reference in plaintiffs' complaint. Pls.' Opp'n, Dkt. No. 31 at 13–16. While plaintiffs make references to these items in their complaint, they appear to argue defendant has gone above and beyond by attaching internal documents to drum up a factual dispute that is improper at the motion to dismiss stage. *Id.* This dispute centers on two documents. First, an October 2021 email Berkshire received from NBT Bank, Marshall's prior plaintiffs that rely upon in support of their contention that Berkshire possessed actual knowledge—a necessary component of each of their aider and abettor claims—warning defendant that Marshall may be running a Ponzi scheme. *See* Compl. ¶ 91. Second, certain documentation about various alerts that Berkshire allegedly received related to Marshall's activity. *See id.* at ¶ 86.

In plaintiffs' view, "Berkshire has short-circuited all of the discovery that would normally inform the Court's interpretation of these documents" as Berkshire's response to the email, and what it learned by way of the alerts generated by Marshall's banking activity, are "the ultimate issues in this case." *Id.* at 15. By attaching both "a disputed and incomplete NBT investigation" as well as internal notes regarding the resolution of the alerts generated by Marshall's account activity, plaintiffs contend Berkshire has introduced matters outside of the pleadings which, if the Court were to consider them, mandate the conversion of this motion from a Rule 12(b)(6) motion to a Rule 56 summary judgment motion. *Id.* Accordingly, plaintiffs have included along with their opposition a Rule 56(d) affidavit to reflect their need for additional discovery as to these factual disputes. *See* Dkt. No. 31-1.

Berkshire contends plaintiffs' complaint not only cites the documents but extensively quotes them and thus can be properly considered on a motion to dismiss. Def.'s' Reply, Dkt. No. 35 at 6. Berkshire argues plaintiffs complaint includes selective quotes from nine different alerts to show defendant had actual knowledge, but excluded Berkshire's subsequent findings that the alerts did not give rise to "evidence of nefarious activity." *Id.* at 7. Similarly, they contend that plaintiffs included a seven paragraph excerpt of an email NBT Bank sent Berkshire stating that "Marshall may be

running a Ponzi scheme" but failed to include the rest of the NBT email chain which purportedly shows NBT bank provided "no further response" regarding Marshall's conduct. *Id.* Thus, Berkshire argues plaintiffs' assertion that additional discovery be required is disingenuous because there is no issue of notice as to these documents and they are substantially referenced and incorporated in the complaint. *Id.* at 7–8.

If matters outside of the pleadings are presented to and not excluded by the Court on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56 [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). "[W]hen deciding a motion to dismiss, 'the Court may consider "documents attached to, or incorporated by reference in the Complaint, and matter of which judicial notice may be taken[.]"'" *Chee War, as Adm'r of the Est. of Nyah Mway v. City of Utica & Officer Patrick Husnay*, 2026 WL 2516559, at *2 (N.D.N.Y. Aug. 26, 2026) (quoting *U.S. v. Bd. Of Elections,* 2026 WL 1999921, at *7 (N.D.N.Y. July 10, 2026)); *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002); *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (other citations omitted). "To be incorporated by reference, the complaint must make a clear, definite, and substantial reference to the documents.... [and] [t]o be integral to a complaint, the plaintiff must have (1) actual notice

of the extraneous information and (2) relied upon the documents in framing the complaint.'" *Id.* (quoting *Benny v. City of Long Beach*, 2021 WL 4340789, at *10 (E.D.N.Y. Sept. 23, 2021) (internal citations omitted).

Before engaging in the parties' arguments, the Court will take a moment to highlight one key principle with respect to a motion to dismiss. In plaintiffs' opposition, they assert that "on this motion to dismiss, all of [p]laintiff's allegations must be accepted as true, and all reasonable inference must be drawn in [p]laintiff's favor." Pls.' Opp'n, Dkt. No. 31 at 14 (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). But the Court does not find the law in that case to be quite as broad as plaintiff does. *See Loreley*, 797 F.3d at 171 (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)) ("As always at the Rule 12(b)(6) stage, we credit all *non-conclusory* factual allegations in the complaint and draw all reasonable inferences in [p]laintiff's favor") (emphasis added). Plaintiff is reminded that allegations which lack factual content or amount to bare conclusions are not automatically accepted as true at this stage. *See e.g. Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations […] a plaintiff's obligation to provide the 'grounds' of [their] 'entitle[ment] to relief] requires more than labels and *conclusions*[.]") (emphasis added).

Setting that aside, there is no doubt plaintiffs have implicated and substantially referenced the documents defendant have introduced in their motion. Nor have plaintiffs objected to the documents on the basis of having not received proper notice as to their contents. *Chee War*, 2026 WL 2516559, at *2. Even so, the Court need not rely on the additional source material defendant has introduced because plaintiffs' allegations that defendant had actual knowledge as derived from both the NBT Bank email and the system alerts, which will be discussed further *infra* with respect to the merits to their claims, are bare conclusions. First, with respect to the emails from NBT, concluding that Berkshire had actual knowledge based on an email that Marshall "may be running a Ponzi scheme," absent more, is conclusory. Plaintiffs has offered no allegations that NBT Bank gave defendant any further information to give rise to such knowledge, or to plausibly suggest that defendant failed to inquire further in response to NBT Bank. And the nine alerts, taken precisely as they are alleged by the plaintiffs, show that Marshall had investors, accepted cash investments, received loans for buying properties, made large check deposits, and paid out loan notes disbursements constituting returns with interest. But without more to show how or why these alerts gave rise to actual knowledge of a Ponzi scheme on Berkshire's part, the allegation that these alerts give rise to such knowledge is conclusory. And again, while the Court finds it *could* consider the broader

record defendant has incorporated in their motion, it need not to do so to reach its conclusion. Accordingly, plaintiffs' requests for more time to complete discovery and/or to convert defendant's motion pursuant to Rule 12(d) will be denied.

**B. <u>Aider and Abettor Claims</u>**

Moving along and as discussed *supra*, plaintiffs bring three claims against Berkshire under an aider and abettor theory of liability. Berkshire now moves to dismiss these claims pursuant to Rules 12(b)(6) and 9(b), arguing that plaintiffs fail to demonstrate that they either possessed actual knowledge or substantially assisted with the Ponzi scheme perpetrated by Marshall. In plaintiffs' view, Berkshire possessed actual knowledge of the Ponzi scheme derived from: (1) their due diligence obligations and efforts, along with surveillance reports generated by their sophisticated account activity monitoring systems; (2) information and communications they received from Marshall's investors; and (3) notice they received from another bank which plaintiffs contend described Marshall's scheme. Compl. ¶ 134.

Plaintiffs further allege that Berkshire aided and abetted Marshall's scheme by "render[ing] substantial assistance" when they accepted deposits to consummate the sale of unregistered promissory notes, allowed Marshall's commingled accounts to remain open, and processed thousands of transactions involving the deposit and disbursement of investor funds that

perpetuated Marshall's illicit activity. *Id.* ¶ 135. And plaintiffs contend Berkshire substantially aided Marshall by providing him with a scanner which allowed him to remotely deposit up to $300,000 in checks per day. *Id.* Without Berkshire's assistance, plaintiffs argue the Ponzi scheme would have been unable to continue. *Id.*

Berkshire has moved to dismiss this claim, contending that plaintiffs fail to plead facts from which one could strongly infer Berkshire possessed actual knowledge of Marshall's scheme. Def.'s Mem., Dkt. No. 26-1 at 18. First, defendant argues there is no impropriety with respect to plaintiffs' allegations of Marshall commingling funds between his multiple sole proprietorship bank accounts and his personal account because sole proprietors and their owners constitute the same legal entity and, thus, the movement of between these accounts cannot be found to be suspect. *Id.* at 18–19. Next, Berkshire argues plaintiffs' allegations that defendant possessed actual knowledge because they knew Marshall was soliciting investments is insufficient. *Id.* at 20–22. Berkshire contends that while, in hindsight, the indicators of fraud may appear obvious, plaintiffs' allegations nonetheless fail to give rise to a strong inference of actual knowledge because knowing Marshall was receiving loans or investments from individuals does not equate to knowledge he ran a Ponzi scheme. *Id.* at 20. Stated differently, defendant argues that the plaintiffs' showing they should have known

Marshall was orchestrating a Ponzi scheme is not synonymous with having actual knowledge of one. *Id.* at 22.

Moreover, Berkshire contends that NBT Bank never provided them with actual knowledge of a Ponzi scheme. *Id.* at 23–24. Defendant argues the plaintiffs incorrectly imply Berkshire received a warning when NBT Bank allegedly forced Marshall out as a banking customer in 2015, after which he became a Berkshire customer. *Id.* at 23. But Berkshire asserts that NBT Bank did not inform them that Marshall "may be running a Ponzi scheme" until October 18, 2021, six years after plaintiffs contend Marshall became a Berkshire customer. *Id.* And even if they had been warned, defendant contends this still fails to show their actual knowledge of Marshall's scheme because the warning didn't contain any information to create such knowledge, NBT Bank "failed to follow up with any evidence[,]" and Berkshire's own investigation failed to uncover any evidence of a Ponzi scheme. *Id.* at 24.

Turning next to plaintiffs' allegations that Marshall's account activity yielded numerous alerts sufficient to provide Berkshire with actual knowledge, defendant argues that plaintiffs fail to acknowledge Berkshire's follow-ups to these alerts were each "resolved with conclusions that the account activity was reasonable, normal, or not suspicious." *Id.* In addition, Berkshire contends that plaintiffs' allegations about the alerts are entirely

conclusory because they have not demonstrated how they provided them with actual notice Marshall was using his account to perpetrate fraud. *Id.* at 25.

Next, insofar as plaintiff contends that Berkshire had actual knowledge of Marshall's activity based of the amount of cash deposits he made in excess of $10,000, they argue this argument is conclusory because "knowledge of large cash transactions does not demonstrate knowledge of a Ponzi scheme." *Id.* at 26. Further, each of these instances were "resolved with conclusions that Marshall's account activity was reasonable." *Id.*

Finally, as to plaintiffs' claim that the scope of Marshall's banking activity in Berkshire's Oriskany Falls branch was so substantial and personal that it gave rise to actual knowledge, Berkshire contends that plaintiff presents no evidence from which to find a strong inference that they possessed actual knowledge. In Berkshire's view, neither the size of plaintiffs' account nor the closeness of the relationship between Berkshire' employees and Marshall or his employees have any bearing on defendant having actual knowledge. *Id.* at 26–27.

Plaintiffs have opposed. Pls.' Opp'n, Dkt. No. 31. They contend their case is not premised on an argument that because a series of red flags were present, Berkshire must have known Marshall was orchestrating a Ponzi scheme. *Id.* at 16. Rather, plaintiffs argue they have set forth an array of "concrete examples of transactions, alerts, and warnings confirming that the

Bank had actual knowledge" of Marshall's Ponzi scheme. *Id.* at 12. They contend that they need not cite an explicit acknowledgement of fraud and can instead demonstrate actual knowledge through allegations of circumstantial evidence. *Id.*

Plaintiffs argue they have sufficiently alleged that, by 2018, Berkshire knew Marshall was selling unregistered promissory notes and identify specific notes that defendant received and approved. *Id.* at 16. They contend defendant "tagged Marshall" as a high-risk customer based on alerts of fraud they received and subsequently flagged his accounts for enhanced due diligence and monitoring. *Id.* Plaintiffs allege Berkshire utilized systems which scrutinized these accounts and repeatedly alerted Berkshire that Marshall was paying "returns[,]" "disbursements[,]" and "distributions" from other investors' funds which were the "primary source of deposits and disbursements" from Marshall's accounts. *Id.* at 16–17. These same systems alerted defendant that Marshall lacked the revenue necessary to satisfy his obligations to other investors, which is an indicator of a Ponzi scheme. *Id.*

According to plaintiffs, Berkshire also had actual knowledge under a theory of conscious avoidance or willful blindness. *Id.* at 19–22. Plaintiffs allege Berkshire retroactively "created internal documentation minimizing prior concerns" about Marshall's activity which "supports an inference of conscious avoidance rather than resolution." *Id.* at 17. Despite being

"repeatedly confronted with specific transactions and occurrences demonstrating that Marshall operated his Eight Percent Fund as a Ponzi scheme[,]" receiving numerous alerts of fraud from their monitoring systems, and even getting a warning from another bank that Marshall "was running a Ponzi scheme[,]" Berkshire "continued to support Marshall's scheme for years" which gives rise to a "strong inference that [defendant] buried its hand in the sand" to avoid lawsuits such as the one now before this Court. *Id.* at 22.

Finally, plaintiffs contend Berkshire substantially assisted Marshall's Ponzi scheme. *Id.* at 22–24. They argue Berkshire accepted banking customer after another bank had severed ties with him for his high-risk conduct. *Id.* at 23. Thereafter, Berkshire serviced Marshall's multiple accounts wherein he "solicit[ed], pool[ed], and disburse[d] investor funds." *Id.* And even after getting numerous alerts and a warning from NBT Bank, plaintiffs allege "Berkshire processed hundreds of millions of dollars of investor inflows and outflows" which kept Marshall's scheme running. *Id.*

Plaintiffs also claim Berkshire "reviewed" and "blessed" investor notes and letters and "encourage[ed] Marshall to continue selling investments and reassur[ed] him that the documentation" he provided was "acceptable[.]" *Id.* They contend that "for years[,] Berkshire provided deposit and payment services to Marshall in service of his Eight Percent scam, with full knowledge

that the transactions it was facilitating were perpetuating" a Ponzi scheme despite this activity "trigger[ing] frequent alerts in [defendant's] monitoring systems." *Id.* Lastly, plaintiffs argue "Berkshire doubled-down on this assistance" after receiving the warning from NBT Bank by providing Marshall with a remote deposit scanner that enabled him to deposit as much as $300,000 per day. *Id.* at 24.

**1. Aiding and Abetting Fraud & Conversion**

Turning first to plaintiffs' claims that Berkshire aided and abetted Marshall's fraud and conversion, plaintiffs allege that Berkshire possessed actual knowledge of the Ponzi scheme as a result of their due diligence obligations and efforts, along with surveillance reports generated by their sophisticated account activity monitoring systems. Plaintiffs also argue that communications Berkshire received from Marshall's investors and his prior banking provider, NBT Bank, give rise to actual knowledge. *Id.*

Next, plaintiffs contend that Berkshire "rendered substantial assistance to, and aided and abetted Marshall's fraudulent investment scheme, by accepting deposits to consummate the sale of unregistered promissory notes, allowing Marshall's commingled accounts to remain open, and by continuing to process thousands of transactions involving the deposit and disbursement of investor funds that kept the scheme afloat." *Id.* ¶ 135. Plaintiffs contend that assert that Berkshire affirmatively "ma[d]e Marshall's

fraud easier" by proving him with a scanner that allowed him to deposit $300,000 in checks per day. *Id.* Without Berkshire's assistance, plaintiffs argue Marshall's Ponzi scheme would not have been able to continue as it did. *Id.*

But Berkshire contends that plaintiffs fail to show they provided substantial assistance to Marshall's fraud. Def.'s Mem., Dkt. No. 26-1 at 27–28. First, defendant argues that plaintiffs' allegations that Berkshire provided substantial assistance by providing "ordinary banking services" fails because a bank's provision of services, opening of accounts, or approval of transfers do not amount to substantial assistance. *Id.* Next, Berkshire contends that plaintiffs' argument that providing Marshall with remote deposit amounts to substantial assistance fails because, without factual support, their equating of the two amounts to a conclusory allegation. *Id.* at 27–28.

"To establish liability for aiding and abetting fraud, a plaintiff must show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Rosner v. Bank of China* ("*Rosner I*"), 2008 WL 5416380, at *4 (S.D.N.Y. Dec. 18, 2008), aff'd 349 F. App'x 637 (2d Cir. 2009) (summary order) ("*Rosner II*") (cleaned up); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006).

As relevant here, the "actual knowledge" element of a claim for aiding and abetting fraud is a distinct requirement from the scienter required to allege the underlying fraud itself. *In re Agape Litigation* ("*Agape II*"), 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011) (citing *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 442 (S.D.N.Y. 2010)). Put differently, a plaintiff "must allege that the defendant had actual knowledge of the wrongful conduct committed, not simply that the defendant should have known of the conduct." *Anwar*, 728 F. Supp. 2d at 442–43 (citing *Rosner II*, 349 F. App'x at 639).

Further, a plaintiff asserting a fraud claim in a federal forum must satisfy the heightened pleading requirement of Rule 9(b). Specifically, under Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *Lerner*, 459 F.3d at 290 (quoting FED. R. CIV. P. 9(b)). However, because "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Id.* (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (internal quotation marks and citation omitted)).

The requisite "strong inference" of fraud can be demonstrated "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial

evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

To show a defendant aided and abetted the fraud, plaintiffs must also demonstrate that the defendant "provided substantial assistance to advance the fraud's commission." *Rosner I*, 2008 WL 5416380, at *4. Such substantial assistance can be ascertained where "(1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed; and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Agape II*, 773 F. Supp. 2d at 322 (quoting *Rosner I*, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008) (internal citations omitted). Importantly, "[w]here a defendant has no affirmative duty to act, their failure to act may not serve as the basis for claiming that the defendant provided substantial assistance." *Id.*

While the parties did not present unique arguments as to plaintiffs' aiding and abetting conversion claim, the legal standard for that claim mirrors the aiding and abetting fraud standard set forth *supra*. *Agape II*, 773 F. Supp. 2d at 325–26 (quoting *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009)) (holding that aiding and abetting conversion also requires the "existence of a primary violation, actual knowledge on the part of the aider and abettor, and substantial assistance.") Where the "underlying

wrong with respect to [the aiding and abetting conversion claim] is fraud, [actual knowledge] must also be alleged with particularity pursuant to Rule 9(b)." *Id.* at 326 (quoting *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 286 (E.D.N.Y. 2010)). A conversion occurs where "someone, intentionally and without authority, assumes control over personal property belonging to someone else, interfering with that person's right of possession." *Id.* (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006)).

a. Actual Knowledge[3]

As an initial matter, plaintiffs have not presented sufficient facts to give rise to an inference of actual knowledge or fraudulent intent. *See Agape II*, 773 F. Supp. 2d at 308 (quoting *Shields*, 25 F.3d at 1128). While plaintiffs claim that Berkshire knew by 2018 that Marshall was soliciting the sale of unregistered promissory notes and alleged nine alerts to show Berkshire's awareness that Marshall actively solicited "unregistered investments[,]" the assertion that defendant knew the investments were unregistered is entirely conclusory. Compl. ¶¶ 86–88. Plaintiffs' allegations that Berkshire, having been provided with investor notes to review and informed by one of Marshall's representatives that a promissory note had been issued to

[3] There is no dispute between the parties as to the existence of either a fraud or of conversion, so the first element of plaintiffs' two claims discussed in this subsection have been plausibly alleged.

investors, was thus made aware of Marshall's scheme are similarly conclusory. *Id.* ¶¶ 89–90. And their allegations that "Marshall was depositing and disbursing significant funds despite not being a financial advisor, broker, or in any business with a stated purpose of soliciting investment" follow suit.

And plaintiffs' assertion that "Berkshire [ ] received communications from investors or other banks describing Marshall's investment scheme" are no different. For instance, plaintiffs' reference to the October 18, 2021 email from NBT Bank to Berkshire about Marshall sets forth only that Marshall is an individual who NBT Bank believed "*may* be running a Ponzi scheme[,]" that NBT Bank saw "a lot of money coming from individuals for 'interest payments' etc." and that Marshall "bills himself as some sort of financial advisor[.]" Compl. ¶ 91 (emphasis added). Nothing in that e-mail, taken precisely as it is alleged in plaintiffs' complaint, gives rise to a strong inference that Berkshire acquired actual knowledge of Marshall's Ponzi scheme.

Plaintiffs' claims that Berkshire allowed Marshall to commingle funds, received numerous alerts from their sophisticated monitoring systems, or had legal obligations to identify fraudulent activity also fail allege non-conclusory facts to permit this Court to find a "strong inference" that defendant obtain

actual knowledge. There is no showing that Berkshire received actual notice that Marshall was using his account to perpetrate fraud.

And despite only raising the argument in opposition to Berkshire's motion, plaintiffs also contend they demonstrate Berkshire's actual knowledge by showing they consciously avoided or exhibited willful blindness as to Marshall's scheme. However, "a theory of actual knowledge based on conscious avoidance requires facts support an inference that defendant acted with a culpable state of mind." *Agape II*, 773 F. Supp. 2d at 308–9. Plaintiffs argue they have met this burden here by showing defendant, when "confronted with specific transactions and occurrences demonstrating that Marshall operated" a Ponzi scheme "buried its hand in the sand[.]" In support, they assert that the numerous alerts of fraud and the explicit warning from NBT Bank that "Marshall was running a Ponzi scheme" followed by Berkshire's continued support thereafter make out this claim. But plaintiffs' assertions that the alerts clearly demonstrated fraud or that NBT Bank's warning explicitly shows Marshall ran a Ponzi scheme are conclusory and fail to show Berkshire acted with a culpable state of mind. Accordingly, this argument will be rejected.

In sum, plaintiffs' complaint speculates that Berkshire possessed actual knowledge as to Marshall's Ponzi scheme based on conclusory allegations that they were told by another bank that he may be running a Ponzi scheme

and that they received, *inter alia*, thousands of alerts of deposits and disbursements from his accounts. While these allegations might indicate that defendant should have known Marshall was acting improperly, the conclusory nature of plaintiffs' allegations render them insufficient to demonstrate the actual knowledge required to make out a common law claim of aiding and abetting fraud. *See Anwar*, 728 F. Supp. 2d at 442–43 (citing *Rosner II*, 349 F. App'x at 639). Stated differently, although these allegations may give rise to suspicions, they do not give rise to an inference of actual knowledge of Marshall's scheme.

b. <u>Substantial Assistance</u>

Even if the Court were to assume that plaintiffs met their burden as to Berkshire's actual knowledge at the motion to dismiss stage, their claims still fail because they also have not included any non-conclusory allegations that defendant substantially assisted Marshall as to his Ponzi scheme. Plaintiffs contend Berkshire failed to act because Marshall was a substantial and profitable customer providing business they did not want to lose and that Marshall was provided with a remote deposit scanner that enabled him to deposit up to $300,000 per day into his accounts to keep his scheme afloat. Plaintiffs also allege Berkshire ignored red flags, system alerts of fraud, and clear indicators that Marshall was soliciting investment but, instead of terminating their relationship with him or taking any action, continued to

provide banking services to Marshall. They contend that Berkshire did this even when it should have been clear that he was running a Ponzi scheme, thus perpetuating the Ponzi scheme to plaintiffs' detriment.

But plaintiffs have set forth no non-conclusory allegations that Berkshire helped Marshall to perpetrate his Ponzi scheme, that they helped him conceal it, or failed to act when they should have. *Agape II*, 773 F. Supp. 2d at 322 (quoting *Rosner I*, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008) (internal citations omitted). Insofar as plaintiff provided Marshall with a remote deposit scanner, plaintiffs only speculate that Berkshire did so to aid his scheme in any respect. And plaintiffs have not offered any non-conclusory facts to suggest that Berkshire's failure to act constitutes substantial assistance. *Id.*

Accordingly, plaintiffs fail to plausibly allege either an aiding and abetting fraud or aiding and abetting conversion claim. While they have presented facts describing Marshall's activity in substantial detail and perhaps even that Berkshire should have known Marshall was involved in unusual activity, their arguments that defendant either possessed actual knowledge or provided substantial assistance to Marshall rest entirely on conclusory allegations. Berkshire's motion to dismiss both of these claims will be granted.

**2. Aiding and Abetting Breach of Fiduciary Duty**

Plaintiffs next contend Marshall owed fiduciary duties to the customers of his tax preparation and insurance businesses and this duty extended to those who invested in the Marshall Fund. Compl. ¶ 138. They argue this duty was breached when Marshall used these customers' information to solicit and secure funds to perpetuate his Ponzi scheme. *Id.* ¶ 140. And plaintiffs argue that Berkshire had both actual knowledge of Marshall's breaches of fiduciary duties to these clients and substantially assisted Marshall's breach by "accepting deposits to consummate the sale of unregistered promissory notes to remain open, and by continuing to process thousands of transactions involving the deposit and disbursement of investor funds that kept the scheme afloat." *Id.* ¶¶ 142–43.

Berkshire has moved to dismiss this claim on the basis that the plaintiffs have not plausibly alleged a breach of fiduciary duty. Def.'s Mem., Dkt. No. 26-1 at 28–29. In defendant's view, plaintiff has failed to go beyond conclusory allegations to show that Marshall owed a fiduciary duty. *Id.* Defendant also argues that, because the relationship between Marshall and his investors was governed by promissory notes, any fiduciary claims are "foreclosed as superfluous." *Id.* at 29.

Plaintiff has opposed. Pls.' Opp'n, Dkt. No. 31 at 24–26. First, they argue that the dismissal of fiduciary duty claims at the motion to dismiss

stage is generally disfavored. *Id.* at 24. Next, they contend that Berkshire's efforts to seek dismissal on the basis of the relationship between Marshall and the investors being governed by notes to be inaccurate. *Id.*

To succeed on a claim of aiding and abetting a breach of fiduciary duty at the motion to dismiss stage, a plaintiff must show: "(1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff suffered actual damages as a result of the breach." *Agape II*, 773 F. Supp. 2d at 298 (quoting *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 466 (S.D.N.Y. 2009)) (cleaned up). This claim resembles one for aiding and abetting fraud "in that both causes of action require a plaintiff to allege actual knowledge, substantial assistance, and proximate causation." *Id.* (quoting *In re Agape Litig.* ("*Agape I*"), 681 F. Supp.2d 352, 366–67 (E.D.N.Y. 2010); *Pension Comm. of Univ. of Montreal Pension Plan. v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 201 (S.D.N.Y. 2006)). Finally, "it is well-recognized that '[a] depository bank has no duty to monitor fiduciary accounts maintained at its branches in order to safeguard funds in those accounts from fiduciary misappropriation' and is instead entitled 'to presume that the fiduciary will apply the funds to their proper purposes.'" *Id.* (quoting *Lerner*, 459 F.3d at 287).

Where breach of fiduciary claims are premised on fraudulent conduct, it is subject to the heightened pleading standards set forth under Rule 9(b). *Rahl v. Bande*, 328 B.R. 387, 412–13 (S.D.N.Y. 2005); *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 2002 WL 362794, at *8 (S.D.N.Y. Mar. 6, 2002) (holding general pleading standards set forth under Rule 8(a), not the heightened pleading standards of Rule 9(b), apply to breach of fiduciary duty claims where defendant may have breached fiduciary duty "by conduct not amounting to fraud, such as breaching its duties of care, disclosure and loyalty"); *Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.*, 964 F. Supp. 783, 804 (S.D.N.Y. 1997), *rev'd in part on other grounds sub. nom. Strougo v. Bassini*, 282 F.3d 162 (holding heightened pleading standard of Rule 9(b) does not apply to a breach of fiduciary duty claim not premised on fraud); *In re Luxottica Group S.p.A., Sec. Litig.*, 293 F. Supp. 2d 224, 238 (E.D.N.Y. 2003) (holding that Rule 9(b) does not apply where plaintiff alleges defendants breached their fiduciary duties but does not allege fraud).

As a threshold matter, plaintiffs have alleged that Marshall breached his fiduciary duty to clients of his tax preparation and insurance business by using their information to solicit and secure funds for the purpose of "perpetuat[ing] and prolong[ing] his fraudulent investment scheme. Compl. ¶ 140. The Court finds this to be the very type of allegation that triggers the

heightened pleading standards of Rule 9(b). Plaintiffs also assert that "claim[s] alleging the existence of a fiduciary duty usually [are] not subject to dismissal under Rule 12(b)(6).

Upon review, the Court finds plaintiffs' allegations fail because they are conclusory and fail to plausibly allege the existence of a fiduciary duty. "Under New York law, the elements of a claim for breach of fiduciary duty are: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'" *Mid Atlantic Framing, LLC v. Varish Const., Inc.*, 117 F. Supp. 3d 145, 155, n.6 (N.D.N.Y. 2015) (quoting *Schwartzco Enters. LLC v. TMH Mgmt., LLC,* 60 F. Supp. 3d 331, 352 (E.D.N.Y.2014)); *Johnson v. Nextel Commc'ns, Inc.,* 660 F.3d 131, 138 (2d Cir.2011). Plaintiffs' allegations consist of alleging that "Marshall owed a duty to clients of Marshall Tax Service and his insurance business Miles B. Marshall, Inc." and that this "duty extended to clients of those businesses who invested in Marshall's 8% program." Compl. ¶ 138. And they allege in wholly conclusory fashion that Marshall breached that duty by using the information of these clients to solicit and secure funds to perpetuate his Ponzi scheme. But plaintiffs fail to offer any allegations to plausibly detail what happened or how it happened. Absent this, the Court cannot find that defendant had actual knowledge of such a breach. While hindsight and/or Marshall's subsequent criminal proceedings might shed light on the existence

of such a breach, plaintiffs have not met their standard at the motion to dismiss stage that defendant aided and abetted a breach of fiduciary duty, and this claim will be dismissed accordingly.

### C. Unjust Enrichment

Finally, plaintiffs bring a claim of unjust enrichment, arguing that Marshall conferred a benefit onto Berkshire by making deposits and disbursements from his accounts related to the Ponzi scheme, thus allowing defendant to accrue significant transaction and service fees which Berkshire knowingly and voluntarily accepted and retained. Compl. ¶¶ 147–48.

Berkshire seeks dismissal of this claim. Def.'s Mem., Dkt. No. 26-1 at 29–30. They argue plaintiffs cannot demonstrate that Berkshire received a benefit at plaintiffs' expense, because any fees they collected came at Marshall's expense, not the plaintiffs. *Id.* at 29–30. Moreover, they argue while plaintiffs may have provided Marshall with money, that money was in Marshall's account when Berkshire collected it. *Id.* at 30. Further, Berkshire contends that plaintiffs have not presented facts to indicate any relationship between defendant and plaintiffs that would have caused either reliance or inducement. *Id.* While plaintiffs alleged that defendant was aware of Marshall solicited investments from third parties, defendant argues that this is insufficient to make an unjust enrichment claim. *Id.*

Plaintiffs contend that defendant, operating as Marshall's banker, "unjustly acquired the victims' property and accrued millions of dollars in fees and profits at their expense" Pls.' Opp'n, Dkt. No. 31 at 27.

To state an unjust enrichment claim under New York law, "a [p]laintiff must show that (1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by [p]laintiff." *Schneider v. Colgate-Palmolive Co.*, 677 F. Supp. 3d 91, 105 (N.D.N.Y. 2023) (quoting *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 156 (S.D.N.Y. 2022)) (cleaned up).

As stated *supra*, plaintiffs contend Berkshire, in their capacity as Marshall's banker, unjustly acquired their property and accrued millions of dollars. But "[u]njust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Zim Am. Integrated Shipping Servs. Co., LLC v. Sportswear Grp., LLC*, 2021 WL 5450117, at *7 (S.D.N.Y. Nov. 18, 2021) (quoting *Mahoney v. Endo Health Sols., Inc.*, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016)) (internal quotation marks omitted). Further, a "plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party." *Id.* (quoting *Cohen v. BMW Invs. L.P.*, 144 F. Supp. 3d 492, 501-02 (S.D.N.Y. 2015); *Georgia*

*Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012). While "a plaintiff need not be in privity with the defendant to state a claim for unjust enrichment, there must exist a relationship or connection between the parties that is not too attenuated."' *Id.* (quoting *Cohen*, 144 F. Supp. 3d at 502; *Georgia Malone*, 973 N.E.2d at 746. Claims for unjust enrichment can be dismissed "where the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement." *Id.* (quoting *Georgia Malone*, 973 N.E.2d at 747); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1111 (N.Y. 2011).

Following this rationale, the Court does not find that plaintiffs have alleged any relationship with defendant giving rise to either inducement or reliance. It has been well established *supra* that plaintiffs have failed to plausibly allege that Berkshire had any direct awareness or involvement in Marshall's scheme. Absent this, the Court does not find that the pleadings plausibly show that defendant's involvement, for which they may have accrued fees, was the result of anything beyond the ordinary provision of banking services. Put differently, plaintiffs' claim that Berkshire "knowingly and voluntarily accepted and retained the benefits conferred by Marshall" is a bare conclusion. Berkshire's motion to dismiss plaintiffs' unjust enrichment claim will be granted.

### C. Leave to Amend

By way of their opposition papers, plaintiffs request thirty days of leave to move to amend their complaint. Dkt. No. 31. Under Rule 15(a)(2), leave to amend should be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). And while liberally granting leave to amend after the dismissal of a complaint pursuant to Rule 12(b)(6) is favored in this Circuit, it is not warranted where doing so would be futile. *See, e.g., Fish v. Tom's of Maine, Inc.*, 705 F. Supp. 3d 72, 82 (N.D.N.Y. 2023) (citing *Chimienti v. Wendy's Int'l, LLC*, 698 F. Supp. 549, 563 (E.D.N.Y. 2023)); *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022); *MSP Recover Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023). "[F]utility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)[.]" *Id.* (collecting cases).

Upon review, plaintiffs' request for leave to further amend the complaint will be denied. While plaintiff presents much factual detail in an effort to show that defendant *should* have known about Marshall's conduct, it does not give rise to a strong inference that defendant actually knew of such conduct or substantially assisted Marshall in perpetuating his scheme. In light of this, and given both the heightened pleading requirements set forth under Rule 9(b) and the speculative and conclusory nature of the complaint, the Court finds that allowing further amendment would be futile.

## V. CONCLUSION

Plaintiffs have not alleged facts to support a plausible inference that Berkshire possessed actual knowledge of Marshall's Ponzi scheme or substantially assisted in Marshall's Ponzi scheme. Accordingly, their claims that defendant aided and abetted Marshall in committing fraud, conversion, or the breach of fiduciary duty each fail to satisfy the heightened pleading standards set forth under Rule 9(b). Nor have plaintiffs successfully made out an unjust enrichment claim at this stage. Finally, plaintiffs' request for leave to amend will be denied as futile.

Therefore, it is

ORDERED that

1. Defendant's motion to dismiss (Dkt. No. 26) is GRANTED;

2. Plaintiffs' complaint (Dkt. No. 1) is DISMISSED;

3. Plaintiffs' request to convert defendant's motion to dismiss to a motion for summary judgment pursuant to Rule 12(d) is DENIED;

4. Plaintiffs' request for leave to amend their complaint is DENIED; and

5. The parties' consent motion for in camera review (Dkt. No. 32) is DENIED as moot.

The Clerk of the Court is directed to terminate the pending motion (Dkt. No. 26), enter a judgment accordingly, and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: September 18, 2026
Utica, New York.